United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. COOPER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE, *Commissioner of Social Security*,<br><br>　　　　Defendant.<br>_____/ | No. C-10-4299 EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket Nos. 21, 22)** |

　　　　On October 10, 2007, Plaintiff Michael Cooper filed for disability insurance benefits. Mr. Cooper has exhausted his administrative remedies with respect to his claim of disability. This Court has jurisdiction for judicial review pursuant to 42 U.S.C. § 405(g). Mr. Cooper has moved for summary judgment or, in the alternative, a remand for additional proceedings. The Commissioner has cross-moved for summary judgment. Having considered the parties' briefs and accompanying submissions, the Court hereby **GRANTS** Mr. Cooper's motion for summary judgment and **DENIES** the Commissioner's motion.

## I.　FACTUAL AND PROCEDURAL BACKGROUND

　　　　In November of 2005, Mr. Cooper–a right-handed window washer–fell two stories off a ladder while at work onto a concrete floor. AR 270. He was admitted to a hospital in Arizona from November 6-10, 2005 and underwent surgery on November 7 for fractures and other injuries to both hands. AR 221-26. He was given Percocet for pain and instructed on discharge to lift no more than 2 pounds on either arm and to "minimally use the right arm." AR 221. On November 21, 2005, Dr.

Motzkin noted that Mr. Cooper's condition had improved since surgery, he could now begin to "regain finger motion," he was restricted to "no weights whatsoever on the right side," and he could continue taking Percocet three times per day. AR 220. On December 15, 2005, Dr. Motzkin removed Mr. Cooper's "immobilization" instruction and stated that he could begin to lift five pounds, gradually increasing each week. AR 219. He also renewed Mr. Cooper's Percocet prescription. AR 219. On February 9, 2006, Dr. Motzkin stated that Mr. Cooper now had "full finger motion" on his right side but that he still had some numbness and his left arm was still swollen and tender. AR 217. The doctor opined that "both areas have a healing response but have not united completely." AR 217. He gave Mr. Cooper a twenty-pound weight restriction and opined that "[h]e would likely end up with some permanent partial disability." AR 217.

On June 20, 2006, Dr. Motzkin opined that his left side had "healed solidly," but his right side had still "not healed fully and in fact when compared to the original November films has collapsed somewhat." AR 216. He referred Mr. Cooper to a hand surgeon. AR 216. He also noted that Mr. Cooper was suffering from back pain for which he had not yet been treated, and referred him to a spine surgeon. AR 216.[1] On August 21, 2006, Mr. Cooper saw Dr. Ruggeri, the surgeon to whom Dr. Motzkin had referred him. AR 270. Dr. Ruggeri diagnosed Mr. Cooper with "internal derangement" of the right wrist and potential "scapholunate disruption," and recommended another surgery. AR 272.

Mr. Cooper therefore underwent his second right hand surgery on October 27, 2006, during which Dr. Ruggeri concluded that he had a torn ligament and frayed cartilage. AR 268. The operative report noted that Mr. Cooper would need careful observation for two-three months. AR 268. The follow-up from that surgery proceeded as follows. On November 2, 2006, Dr. Ruggeri noted that Mr. Cooper had been taking Percocet every 6-10 hours, that he could "begin gentle active

---

[1] It appears from the record that Mr. Cooper did not see a doctor for his back symptoms until June 13, 2007, when Dr. Wu examined Mr. Cooper for "chronic low back pain for 2 years," for which he had never had an evaluation. AR 290. Dr. Wu noted that he may have a compression fracture and ordered x-rays as well as Endocet for pain. AR 290-91. Upon reviewing the x-rays, Dr. Wu noted some problems but opined that there was "nothing very serious in appearance." AR 293. Mr. Cooper stated at his administrative hearing that he had trouble getting referrals approved to see a doctor for his back. AR 41.

2

and passive range of motion exercises to the thumb and fingers only," and that his "work status is continued no work until further notice." AR 267. On November 9, 2006, Dr. Ruggeri placed Mr. Cooper in a long arm cast "for protection." AR 266. On November 16, 2006, Dr. Ruggeri opined that Mr. Cooper was "doing reasonably well," that he "still had some residual paresthesia to the right long and right ring fingers," but that he was "maintaining good pull through of the flexor and extensor tendons." AR 264. Dr. Ruggeri also instructed that Mr. Cooper's "work status is continued no work until further notice," and that he was permitted to take Percocet for pain. AR 264. On November 29, 2006, Dr. Ruggeri noted that Mr. Cooper's cast was modified to a short arm cast. AR 263. On December 14, 2006, the day before he moved to California, Dr. Ruggeri examined him and opined that the wounds had healed well, that Mr. Cooper still had some tenderness but that the x-rays showed good positioning, and that Mr. Cooper could take both Naprosyn and Hydrocodone for pain. AR 262. He was also given a splint to use for three weeks. AR 262. Dr. Ruggeri did not update his work status restriction of "no work until further notice" from his November 16, 2006 examination.

In conjunction with his California Workers' Compensation claim, Dr. Bell examined Mr. Cooper in March 2007. AR 276-80. Dr. Bell found that Mr. Cooper had posttraumatic arthrosis of the right wrist and hand with persistent pain, that he was not permanent and stationary and that he was unable to return to heavy duties. AR 279. He also noted that Mr. Cooper was continuing to take Percocet and Vicodin. AR 277. On May 18, 2007, Dr. Satterfield examined Mr. Cooper on Dr. Bell's request and opined that Mr. Cooper suffered from a "chronic fracture deformity," a widened "scapholunate joint space," "degenerative hypertronic spurring," and "abnormal dorsal soft tissue density." AR 300-01. On May 23, 2007, Dr. Bell noted that Mr. Cooper was still reporting persistent pain, and recommended additional surgery. AR 281-82. Dr. Bell stated that Mr. Cooper was not able to return to work and was not permanent and stationary. AR 282.

On October 12, 2007, Dr. Stein, a new treating physician, issued a report recommending surgery and confirming Mr. Cooper's "temporary total disability" until surgery. AR 302, 308-10. More specifically, he stated that Mr. Cooper could theoretically work with restrictions of: "limited use of right hand and wrist, no lifting, pushing, pulling, or carrying greater than 10 pounds, and no

repetitive forceful pinching, gripping, or torquing. As modified duty is currently not available, he would have to remain [temporary total disability]." AR 310. An attachment to Mr. Stein's report indicated that Mr. Cooper had stated his "previous doctors haven't given any work release." AR 313. During a later visit on November 16, 2007, Dr. Stein referred Mr. Cooper for a second opinion at his request and issued a permanent and stationary report, opining that absent additional surgery, Mr. Cooper would require permanent functional restrictions, including: no repetitive lifting, pushing, pulling, or carrying more than 10 pounds; occasional lifting, pushing, pulling, or carrying between 10-25 pounds; and seldom lifting, pushing, or pulling between 25-50 pounds. AR 304. Dr. Stein stated that Cooper could not work as a window washer, and would have difficulty working as an air condition/heating technician (a position for which he had re-trained). AR 304.

Cooper underwent a third hand surgery on November 12, 2008, to correct numerous persistent problems including "severe pain which is not controlled by narcotics." AR 336, 360. On January 14, 2009, an examining physician noted that Mr. Cooper may still have a partial nerve injury, and that his three surgeries had "given only partial pain relief." AR 367. Mr. Cooper then had a final surgery on April 13, 2009 to remove hardware. AR 347. On April 20, 2009, Dr. Stein opined that Mr. Cooper was recovering well but cautioned that because "he has been disabled a long time, [] his prognosis for a full recovery is still marginal." AR 345. However, as of May 27, 2009, Mr. Cooper was released to modified duty with certain restrictions. AR 342. Dr. Stein later issued a maximal medical improvement report on June 30, 2009, AR 336-38, noting that Cooper had completed therapy and could return to work without restriction, and that while he had been "dependent on Percocet for a long time," he was now "tapering off of the drug completely." AR 336-37. Mr. Cooper agreed at his administrative hearing that he was able to work after his last surgery and that he had been applying for jobs since he was cleared for work. AR 41-42.

On October 10, 2007, Plaintiff filed applications for disability insurance benefits pursuant to Titles II of the Social Security Act. AR 120-128. The agency denied Plaintiff's claims initially and on reconsideration, and an Administrative Law Judge (ALJ) convened a hearing on September 24, 2009. AR 28-49. In a decision dated December 10, 2009, the ALJ determined that Plaintiff was not disabled. AR 11-19. The Appeals Council (AC) denied Plaintiff's request for review on July 19,

2010, making the ALJ's decision the final determination of the Commissioner of Social Security for purposes of judicial review. AR 6-8.

The ALJ evaluated Mr. Cooper's claim of disability using the five-step sequential evaluation process for disability required under federal regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.

> Step one disqualifies claimants who are engaged in substantial gainful activity from being considered disabled under the regulations. Step two disqualifies those claimants who do not have one or more severe impairments that significantly limit their physical or mental ability to conduct basic work activities. Step three automatically labels as disabled those claimants whose impairment or impairments meet the duration requirement and are listed or equal to those listed in a given appendix. Benefits are awarded at step three if claimants are disabled. Step four disqualifies those remaining claimants whose impairments do not prevent them from doing past relevant work considering the claimant's age, education, and work experience together with the claimant's residual functional capacity ("RFC"), or what the claimant can do despite impairments. Step five disqualifies those claimants whose impairments do not prevent them from doing other work, but at this last step the burden of proof shifts from the claimant to the government. Claimants not disqualified by step five are eligible for benefits.

*Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

At Step One, the ALJ determined that Cooper had not engaged in substantial gainful activity from November 5, 2005 through his date last insured of June 30, 2006. AR 16. The ALJ therefore proceeded to step two.

At Step Two, the ALJ concluded that Cooper did not suffer from a severe impairment or combination of impairments. AR 16. Specifically, he concluded that while Cooper did have underlying "medically determinable impairments," those impairments did not "significantly limit his ability to perform basic work-related activities for 12 consecutive months." AR 16 (citing 20 C.F.R. § 404.1521). The ALJ noted that Cooper complained of "markedly limited [] functioning" due to his impairments, including limited range of motion in his right wrist and back pain that "make[s] it difficult to stand for long periods of time." AR 17. The ALJ also noted that Cooper has needed "narcotics-based pain medication." AR 17. However, the ALJ noted in contrast that Cooper had completed an eight-month vocational training program for heating and air conditioning in 2006, despite his self-reports of difficulty concentrating. AR 18. He also complained of difficulty sitting and standing, but those claims were not significantly supported in the record. AR 18.

5

The ALJ lent "controlling weight" to the opinions of State Agency physicians, which the ALJ found were "well-supported by the record." AR 18. Specifically, two assessments in June and November of 2007 stated, respectively, that Cooper has no impairment that would preclude him from working for 12 months or more, and that there was insufficient medical evidence in the record "to establish persistent and significantly limiting impairment prior to the claimant's date last insured, June 30, 2006." AR 18; *see* AR 284 (June report), 315 (November report). The ALJ also credited a third agency physician opinion in March 2008, which adopted the second opinion without further analysis. AR 18; *see* AR 328 (March report).

By contrast to the agency physicians' opinions, the ALJ discounted the treatment records of Dr. Bell from March 2007, which stated that Cooper was "[n]ot able to return to heavy duties." AR 18. The ALJ noted that the restriction of "heavy" work challenges Cooper's self-assessment of more severe pain and impairment. The ALJ similarly discounted Dr. Bell's May 2007 comment that Cooper was "[n]ot able to return to work," as well as Dr. Stein's October 2007 comment that "[a]t this point, [Cooper] can work with restrictions consisting of: limited use of right hand and wrist, no lifting, pushing, pulling, or carrying greater than 10 pounds, and no repetitive forceful pinching, gripping, or torquing." AR 18. The ALJ also noted Dr. Stein's later observation in November 2007 that Cooper would "require permanent restrictions, which include: no repetitive lifting, pushing, pulling, or carrying greater than 10 pounds, occasional lifting, pushing, pulling, or carrying between 10-25 pounds, and seldom lifting, pushing, pulling, or carrying between 25-50 pounds." AR 18. The ALJ discounted Dr. Stein's assessments on the basis that they were dated over a year after Cooper's last date insured. The ALJ concluded that the evidence regarding the period prior to Cooper's last date insured supported the state agency physicians. AR 19. The ALJ provided no further explanation or analysis for his ruling that Cooper suffered no severe impairment, and therefore was not disabled.

## II. DISCUSSION

In the instant case, the ALJ ceased his evaluation of Mr. Cooper's claim at Step Two of the five-step sequential evaluation process used to determine whether a claimant is disabled. 20 C.F.R.

1  § 404.1520.[2] Mr. Cooper contends that the ALJ erred in this analysis. Accordingly, the Court

2  addresses only the legal standard and application of Step Two.

3  A.     Legal Standard

4  As the Ninth Circuit has explained, a court

> may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. A court review[s] the administrative record as a whole to determine whether substantial evidence supports the ALJ's decision. . . . [W]here the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-42 (9th Cir. 2008).

At step two, the issue is whether the claimant has one or more severe physical and/or mental impairments. Title 20 C.F.R. § 416.921(a) provides that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."[3] 20 C.F.R. § 416.921(a). Although the regulation uses the phrase "significantly limit," the relevant Social Security rulings establish that the inquiry at step two is actually quite limited. For example, SSR 85-28 provides:

> An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (*i.e.*, the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities).

---

[2] If an ALJ determines that a claimant does not have a severe impairment, then the claimant is considered not disabled and the ALJ need not continue the analysis. 20 C.F.R. § 404.1520(a)(4)(ii).

[3] Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. *See* 20 C.F.R. § 404.1521.

> . . . .
>
> . . . . A claim may be denied at step two only if the evidence shows that the individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process.

SSR 85-28; *see also* SSR 86-8 ("An impairment is not severe if it is a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on the individual's physical or mental ability(ies) to perform basic work activities"); SSR 96-3p ("At step 2 of the sequential evaluation process, an impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

Consistent with the above rulings, the Ninth Circuit has held that "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.2d 1273, 1290 (9th Cir. 1996) (emphasis added; quoting SSR 85-28); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (same). The Ninth Circuit has also underscored that step two is merely "'a *de minimis* screening device [used] to dispose of groundless claims,'" such that an "ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290, and SSR 85-28). But, even though the standard for step two is *de minimis*, the claimant must still prove the impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. § 404.1508. In addition, the impairment must begin prior to the claimant's date last insured, and last or be expected to last for twelve consecutive months. *See*

*Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1457-58 (9th Cir. 1995); 20 CFR § 404.1509.

B.  The ALJ's Analysis

Mr. Cooper argues that ALJ Schum's conclusion that Cooper did not have a severe impairment was not supported by substantial evidence. The Court agrees. Throughout his assessment, ALJ Schum employed a far more stringent legal standard for "severe impairment" than the Ninth Circuit's *de minimis* instruction mandates. In addition, he disregarded treating and examining physicians' opinions, as well as Mr. Cooper's testimony, without justification.

First, ALJ Schum makes no mention of the medical evidence in the record from Mr. Cooper's treating physician in the immediate aftermath of his injury and before his date last insured. Generally, greater weight is afforded to a treating physician's opinion because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Sprague*, 812 F.2d at 1230). The Rule is codified in the regulations:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations . . . . When we do not give the treating source's opinion controlling weight, we apply the factors listed below, as well as the factors in paragraphs (d)(3) through (5) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

20 C.F.R. § 416.927(d)(2). Here, the ALJ fails to address, let alone provide reasons for disregarding, Dr. Motzkin's opinion. As described above, Dr. Motzkin described Plaintiff's post-injury condition, surgery, and restrictions at length, including the fact that as of June 20, 2006, his right wrist had deteriorated rather than healed, causing Dr. Motzkin to refer him to a hand surgeon for a possible additional surgery. *See* AR 216-26. While the June 20 report does not specify a work restriction, Dr. Motzkin's comments indicate that Mr. Cooper's right hand was worse than it had been as of February 9, at which time Dr. Motzkin had given him a "[t]wenty pound weight

9

1 restriction with both arms" and noted that "[h]e will likely end up with some permanent partial
2 disability." AR 216-17. In addition, Dr. Motzkin's December 15 report indicates that Mr. Cooper
3 had been immobilized for 6 weeks post-surgery, and that from December to February he was
4 operating under a "five pound weight restriction per arm increasing five pounds per week for the
5 next eight weeks." AR 219. Dr. Motzkin's statements are uncontradicted in the record. "If a
6 treating physician's opinion is 'well-supported by medically acceptable clinical and laboratory
7 techniques and is not inconsistent with other substantial evidence in [the] case record, [it will be
8 given] controlling weight.'" *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (quoting 20 C.F.R. §
9 404.1527(d)(2)). Indeed, even if a treating physician's opinion is contradicted by other evidence,
10 the Ninth Circuit emphasized that "[a] finding that a treating source medical opinion is not well-
11 supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent
12 with substantial evidence in the case record means only that the opinion is not controlling weight,
13 not that the opinion should be rejected." *Id.* at 631-32 (internal quotation marks omitted). The
14 opinion is still entitled to deference and must be weighed using the factors listed in §§
15 404.1572(d)(2)-(6) and 416.927(d). *See id.* Those factors include

> the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record.

20 *Id.* at 631; *see also* 20 C.F.R. § 416.927(d)(2). "In many cases, a treating source's medical opinion
21 will be entitled to the greatest weight and should be adopted, even if it does not meet the test for
22 controlling weight." *Id.* at 632 (internal quotation marks omitted).

23 In the instant case, ALJ Schum fails to address Dr. Motzkin's opinions in any way, let alone
24 identify any conflicting evidence or provide any justification for rejecting it. No medical evidence
25 in the record conflicts with Dr. Motzkin's opinions, particularly during the time frame in which Dr.
26 Motzkin commented on Mr. Cooper's condition (November 2005 - June 2006). The ALJ therefore
27 erred in failing to credit his opinions.

10

1    Similarly, ALJ Schum fails to explain his basis for rejecting Mr. Cooper's subsequent
2 physicians' opinions.[4] As described above, those reports describe a continuous state of pain and
3 abnormalities in Mr. Cooper's right wrist, such that three additional surgeries were necessary before
4 his final physician cleared him for work on June 30, 2009. AR 336-38. As with Dr. Motzkin, ALJ
5 Schum fails to offer any basis for rejecting their opinions other than the tautological conclusion that
6 they are not well-supported by the record. While he notes that "Dr. Stein's assessments are dated
7 more than a year after the claimant's date last insured," AR 19, such an observation is only relevant
8 if Mr. Cooper had presented no (or insufficient) evidence for the period before those assessments.
9 However, as described above, medical records and opinions from Drs. Motzkin, Ruggeri, and Bell
10 provide a substantial link from the date of his initial accident to the time of Dr. Stein's assessments.
11 *Cf. Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (finding evidence too remote when there was
12 nothing to connect the date last insured to the first assessment over a year later)

13    One piece of evidence to which ALJ Schum points that could arguably complicate Cooper's
14 claim is Dr. Bell's March 2007 assessment that Cooper could not return to "heavy duties." *See* AR
15 18.[5] However, the ALJ's interpretation that this was "a restriction against only heavy work" is
16 belied by Dr. Bell's statement only two months later that Cooper still could not return to work.
17 *Compare* AR 279, *with* AR 282. At best, this renders Dr. Bell's first statement ambiguous,
18 triggering the ALJ's duty to evaluate what Dr. Bell meant and what weight to give Dr. Bell's
19 opinions given the factors described above. Moreover, even if the ALJ's assessment was correct,
20 Dr. Bell's statement would not indicate that Cooper had only a slight abnormality that had little
21 bearing on his ability to do basic work activities such as lifting, pushing, pulling, carrying, or
22 handling. *See* 20 C.F.R. § 404.1521. To the contrary, it indicated that many work activities would

---

[4] Plaintiff proffers as one reason for the ALJ's error that he misunderstood the meaning of the words "not permanent and stationary," as used by Drs. Stein and Bell, in the context of California Workers Compensation. Mot. at 10. Permanent and stationary status is defined as "the point when the employee has reached maximal medical improvement his or her condition is well stabilized and unlikely to change substantially in the next year with or without medical treatment." 8 C.C.R. § 9811(i); *see also* 8 C.C.R. §§ 9785(a)(8). It is unclear from the record whether this was a basis for the ALJ's error.

[5] What would constitute "heavy duties" is not defined or explained.

11

be off-limits. Indeed, Dr. Bell opines in the very same report that Mr. Cooper had "persistent pain" caused by "posttraumatic arthrosis," and that he suffers from "numbness," "stiffness," and "weakness." AR 276-79. In addition, Dr. Bell's statement did not indicate that Mr. Cooper did not have a severe impairment for the *prior* sixteen-month period between November 2005 and March 2007.

The ALJ similarly erred in discounting Mr. Cooper's self-assessments on the basis of a purported lack of credibility. *See* AR 18 (describing some testimony as "dubious"). An ALJ is permitted to reject a claimant's testimony based on credibility, but must do so with specific factual findings supporting the conclusion. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (requiring ALJ to "make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"); *Burch*, 400 F.3d at 680 ("In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain."); *Smolen*, 80 F.3d at 1290 (holding that the ALJ erred in failing to "consider [Smolen's] subjective symptoms in making the severity determination"); *see also* SSR 96-7p (noting that a determination on credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record"; listing various factors, in addition to objective medical evidence, that may be considered when assessing a claimant's credibility regarding pain or other symptoms).

The ALJ did not do so in the instant case. To the extent that Mr. Cooper's testimony regarding his completion of a refrigeration training program during the period of his alleged disability was ambiguous and might suggest an ability to work during that time, the ALJ failed to supplement the record with any information that would help make that determination. *See Webb*, 433 F.3d at 687 ("The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence."). Although Mr. Cooper testified that he had completed an eight-month training program in 2006, he did not provide, nor did the ALJ elicit, any information as to how many hours per day the program lasted, how physically or mentally rigorous the program was, whether Mr. Cooper had

12

1  difficulty completing the program, how often he went to class, etc. *See* AR 31. Thus, the record is
2  ambiguous with respect to this evidence. Standing alone, Mr. Cooper's completion of the training
3  program does not establish a substantial basis to discredit Mr. Cooper's testimony. Nor did it
4  constitute substantial evidence that Mr. Cooper's condition constituted only a minor, slight
5  abnormality. *See Reddick*, 157 F.3d at 722 (stating that, "only if the level of activity were
6  inconsistent with Claimant's claimed limitations would these activities have any bearing on
7  Claimant's credibility").

8        In contrast to the treating and examining physicians' opinions, the agency physicians whose
9  reports the ALJ credited offered only conclusions, without analysis. "The opinion of a
10 nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of
11 the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831; *Orn*,
12 495 F.3d at 631 ("Generally, the opinions of examining physicians are afforded more weight than
13 those of non-examining physicians, and the opinions of examining non-treating physicians are
14 afforded less weight than those of treating physicians.") (citing § 404.1527(d)(1)-(2)); *Cf. Thomas v.*
15 *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining
16 physicians may [] serve as substantial evidence when the opinions are consistent with independent
17 clinical findings or other evidence in the record."). In giving non-treating, non-examining opinions
18 "controlling weight," the ALJ merely justified this decision by stating that they were "well-
19 supported by the record." AR 18. However, the only portions of the record to which the ALJ
20 directly cites contradict, rather the support, the agency physicians' assessments. For example, ALJ
21 Schum cites to Dr. Bell's March 2007 comment that Mr. Cooper was "not able to return to heavy
22 duties." AR 18 (citing AR 279). While the ALJ interprets the word "heavy" to mean that Mr.
23 Cooper must not have suffered from the level of pain he claimed to be under, AR 18, Dr. Bell's own
24 report does not support this conclusion, as he states that Mr. Cooper has suffered from "persistent
25 pain," "numbness," and "occasional . . . numbness," and that Mr. Cooper still required Percocet and
26 Vicodin for pain. AR 277. In addition, Dr. Bell's subsequent report of May 2007, also cited by the
27 ALJ, indicates that Mr. Cooper was still reporting "persistent pain" and was still "not able to return
28 to work" (this time without the qualifier of "heavy"). AR 281-82. Finally, the ALJ cites to Dr.

1   Stein's October and November 2007 reports, both of which indicate significant persistent restrictions
2   due to Mr. Cooper's injuries. *See* AR 310 ("At this point, he can work with restrictions consisting
3   of: limited use of right hand and wrist, no lifting, pushing, pulling, or carrying greater than 10
4   pounds, and no repetitive forceful pinching, gripping, or torquing. As modified duty is currently not
5   available, he would have to remain [temporary total disability]."); AR 304 ("He will require
6   permanent functional restrictions, including: no repetitive lifting, pushing, pulling, or carrying more
7   than 10 pounds; occasional lifting, pushing, pulling, or carrying between 10-25 pounds; and seldom
8   lifting, pushing, or pulling between 25-50 pounds."). These opinions, even crediting the "heavy
9   work" qualifier once offered by Dr. Bell, are more than sufficient to clear the "*de minimis* screening
10  device" of step two. *Webb*, 433 F.3d at 687 (quoting *Smolen*, 80 F.3d at 1290, and SSR 85-28).

11       Given the record evidence to which the ALJ cited, ALJ Schum gave no "specific and
12  legitimate reasons" supported by substantial evidence in the record for disregarding the treating
13  physicians' opinions, as he was required to do. *See Orn*, 495 F.3d at 632 (finding that a physician's
14  opinion that relies on the same clinical findings as the treating physician, but merely comes to a
15  different conclusion, is not substantial evidence). Where the ALJ fails to provide such reasons, the
16  treating or examining physician's opinion must be accepted "as a matter of law." *Hammock v.*
17  *Bowen*, 879 F.2d 498, 502 (9th Cir. 1989); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.
18  1996); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1988).

19       In the instant case, Mr. Cooper's examining and treating physicians repeatedly opine as to
20  his significant restrictions, his need for repeated surgeries, and his extensive need for pain
21  medications. Moreover, at numerous points from at least November 2006 to October 2007, his
22  doctors specifically note that he is not cleared for work at all, let alone work with certain
23  restrictions. *See* AR 264, 267, 282, 302, 310. These reports do not describe new injuries; rather,
24  they characterize Mr. Cooper's restricted status as ongoing. *See, e.g.*, AR 264 (Dr. Ruggeri's
25  November 16, 2006, describing Mr. Cooper's recovery from his second surgery and noting that his
26  "work status is *continued* no work until further notice") (emphasis added). Indeed, Mr. Cooper's
27  own report to Dr. Stein in November 2007 indicates that his "previous doctors haven't given any
28  work release." AR 313. Other doctors, as discussed above, while not specifically writing the words

1 "no work," described significant restrictions on Mr. Cooper's use of his arms beginning from the
2 date of injury and, based on the reports, continuing unabated. Thus, the conclusion that Mr. Cooper
3 was not only able to work, but suffered only a "slight abnormality that has no more than a minimal
4 effect on [his] ability to work," is wholly unsupported by the record. *Smolen*, 80 F.2d at 1290.

Accordingly, the Court concludes that the ALJ's decision was in error. Since the ALJ erroneously rejected the opinions of Mr. Cooper's treating and examining physicians, the Court credits them as a matter of law. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). While the record as it stands does not mandate a finding that Mr. Cooper is disabled, it does mandate a finding that he suffered from a severe impairment from November 2005 to June 2009. Because the ALJ ceased his analysis at Step Two, remand is warranted. *See Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (finding severe impairment and remanding for consideration of subsequent steps when ALJ had erred in rejecting physician opinions at Step Two). The appropriateness of remand is in the discretion of the Court. *Harman v. Appel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000); *Neumeyer v. Barnhart*, No. EDCV 04-1079-JWJ, 2006 WL 39079, at *10 (C.D. Cal. Jan. 5, 2006). Remand is warranted where there are "outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Id.* at *10; *see also Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) ("Remand for further administrative proceedings is appropriate if enhancement of the record would be useful."). On remand, the ALJ should complete the five-step analysis to determine whether Plaintiff is disabled.

This order disposes of Docket Nos. 21 and 22.

IT IS SO ORDERED.

Dated: December 16, 2011

_____
EDWARD M. CHEN
United States District Judge

15